**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES, : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 09-600 |
| CLIFTON SAVAGE : | |

**MEMORANDUM**

**Schiller, J.** December 29, 2009

In a one-count indictment, the Government charged Clifton Savage as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Philadelphia police recovered the weapon underlying the charges when they responded to a report of an ongoing crime and encountered Savage at the scene. Savage now moves to suppress the gun that police found on his person during that encounter, arguing that the officers' actions constituted an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution. Savage also moves to suppress statements that he made to police, arguing that the police violated his Fifth Amendment rights pursuant to *Miranda v. Arizona*. The Court held a hearing on the motion on December 17, 2009. For the reasons that follow, the Court denies the motion.

**I.     BACKGROUND**

At approximately 12:44 a.m. on November 12, 2008, Philadelphia police received an emergency telephone call from a woman inside her second-floor apartment (apartment B2) at 5516 West Haverford Avenue. (Ex. D-1 [Philadelphia PD Incident History Details].) The woman reported that a man she knew had a gun and was banging on her door. (Dec. 17, 2009 Hrg. Tr. at 7.) Responding to the call from a short distance away, uniformed Officers Daniel

Ayres and Daniel Mason arrived at the apartment within a minute of receiving word from dispatch. (*Id.* at 9, 35, 40.) The officers entered the apartment building through an unlocked common door and proceeded down the steps to the basement, based on the mistaken belief that was where B2 was located. (*Id.* at 10, 11, 25, 40.) Quickly realizing that apartment B2 was not in the basement, Officers Ayres and Mason proceeded back up the steps to the second floor. (*Id.* at 11, 25, 40.) The officers did not see anyone in the building until they reached the second floor. (*Id.* at 10-11.)

Officer Ayres was the first to emerge from the stairwell onto the second floor, with Officer Mason behind him. (*Id.* at 15, 42.) Upon exiting the stairwell, Officer Ayres immediately saw an African-American male, later identified as Clifton Savage, three to four feet away from him in a small section of hallway to the right of the stairwell.[1] (*Id.* at 12.) Savage, who was the only person in the hallway, was banging on the door of apartment B2. (*Id.* at 12.) Officer Ayres initially asked Savage "what's going on?" (*Id.* at 25-26, 42.) Continuing on his path to the door of apartment B2, Officer Ayres then asked Savage if he had a weapon. (*Id.* at 13-14, 25-26.) Savage answered affirmatively and began reaching into his pants pocket where he indicated that the gun was located. (*Id.*) It was only at that point that Officer Ayres drew his service pistol. (*Id.* at 15.) Officer Ayres told Savage to stop, and instructed him to place his hands on the wall. (*Id.*) Savage complied with this order. (*Id.* at 16.) Officer Mason then frisked Savage and discovered a .38 caliber pistol in Savage's right front pants pocket. (*Id.*) The officers then handcuffed Savage. (*Id.*) While Savage was handcuffed in the hallway, the woman

---

[1] Apartment B2 was the only apartment to the right of the stairwell, with approximately nine other apartments located on a longer section of hallway to the left of the stairwell. (*Id.* at 11, 12.)

from apartment B2 opened her door to talk to police. (*Id.* at 16-17.) The officers brought Savage outside, and placed him in their police cruiser before returning upstairs to talk to the woman, who confirmed that she knew Savage. (*Id.* at 17.)

*Miranda* warnings were given to Savage when he was interviewed by a detective at the station. (*Id.* at 31.)

## II. STANDARD OF REVIEW

The movant bears the burden of proving, by a preponderance of the evidence, that the evidence in question should be suppressed. *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta,* 965 F.2d 1248, 1256 n.9 (3d Cir. 1992)). However, once the defendant establishes a basis for his motion, the burden shifts to the government to show that the search or seizure was reasonable. *Id*.

## III. DISCUSSION

### A. Fourth Amendment

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." Although a search or seizure involving law enforcement generally requires a warrant based on probable cause, not every encounter between citizens and police officers implicates the Fourth Amendment. "'Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.'" *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009) (quoting *United States v. Drayton*, 536

U.S. 194, 200 (2002)). An integral part of police work involves daily interactions between officers and private citizens, including routine conversation and questions posed by police officers. These routine interactions do not, without more, constitute a seizure. *See United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005); *see also United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) ("The Supreme Court has made clear that a Fourth Amendment 'seizure does not occur simply because a police officer approaches an individual and asks a few questions.'" (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Furthermore, these interactions need not be based on any suspicion of wrongdoing. *United States v. Williams*, 413 F.3d 347, 352 (3d Cir. 2005).

Here, Officer Ayres posed two questions to Savage, while both men were in a common hallway. Savage was free to answer the officer or to ignore him. Officer Ayres issued no commands to Savage, nor did he draw his weapon, or indicate that Savage was compelled to answer his questions. No seizure resulted merely by the close proximity of Officer Ayres to Savage. Thus, at this point Savage was not seized, and the Fourth Amendment was therefore not implicated when Officer Ayres asked Savage if he had a weapon.

After Savage informed the officers that he had a gun and began to reach for it, Officer Ayres drew his weapon and ordered Savage to stop and put his hands on the wall. Savage complied with this command. Clearly, Savage was seized at this point. *See Crandell*, 554 F.3d at 84; *Terry v. Ohio*, 392 U.S. 1, 19-20 n.16 (1968). Officer Mason frisked Savage and recovered a pistol from Savage's pants pocket.

The stop was lawful. An officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry*, 392 U.S. 1, 30. To

4

determine if reasonable suspicion existed at the time of the encounter, courts use a "totality of the circumstances test." *Alabama v. White*, 496 U.S. 325, 328 (1990). Police officers' reasonable suspicion can arise from their own observations. *See Terry*, 392 U.S. at 28. In general, a court should consider:

> specialized knowledge and investigative inferences [of the officer], personal observation of suspicious behavior, information from sources that have proven to be reliable, and information from sources that–while unknown to the police–prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within the tip.

*United States v. Brown*, 448 F.3d 239, 247 (3d Cir. 2006). The court may also consider the temporal and geographic proximity of the suspect to the crime scene; the area in which the suspect is observed; and the similarity between the suspect's physical appearance and the details of the reported descriptions. *See United States v. Harple*, 202 F.3d 194, 196 (3d Cir. 1999).

Here, police saw Savage just moments after receiving a report of a woman complaining of an armed man banging on her door. Savage was the only person in the hallway, and he was exactly where the woman indicated that he would be located, doing exactly what the woman indicated that he would be doing. The officer's personal observation of Savage's banging on the door and the corroboration of the informant's tip established reasonable suspicion to conduct a Terry stop. Also relevant is the fact that the woman was reporting a crime in progress. This allowed the officers to arrive quickly enough to witness the complained of activity (Savage banging on the door).

Reliable information from a citizen informant may also create reasonable suspicion and justify an investigatory stop. *Alabama v. White*, 496 U.S. 325, 326-27 (1990). Among the factors to consider in determining reliability are: (1) whether the officer was able to appraise the

5

witness' credibility through observation; (2) whether the informant can be held responsible if her allegations turn out to be fabricated; (3) whether the content of the information is uniquely known to the informant, and not based on facts or observations available to the public at large; (4) whether the informant has recently witnessed the illegal activity; and (5) the degree to which the information can be corroborated. *United States v. Brown*, 448 F.3d 239, 249-50 (3d Cir. 2006).

In this case, the woman's tip bore indicia of reliability. The woman could have been held responsible had she misinformed police. The woman was not anonymous because she summoned police to her apartment (her address and apartment number were disclosed to police), and she identified herself as living there.[2] She knew that the police would be able to contact her, and hold her responsible for providing misinformation. In fact, the police did interview her after securing Savage. Also, the fact that Savage was in the hallway of an apartment building carrying a gun was not public knowledge. Additionally, the tip was corroborated through the officers' observations discussed above. Viewing the totality of the circumstances, the officers had reasonable suspicion to stop Savage on the belief that he had a gun and had been using it to harass the woman.

The frisk of Savage, which yielded the gun, was also legal. An officer making a lawful stop may frisk a suspect's outer clothing for weapons if he has reasonable suspicion to believe that the suspect is armed and dangerous. *Adams v. Williams*, 407 U.S. 143, 146 (1972) (citing *Terry*, 392 U.S. at 24). The purpose of this limited search is not to discover evidence of crime,

---

[2] Savage's reliance on *Florida v. J.L.*, 529 U.S. 266 (2000) is misplaced. Unlike the situation in *J.L.*, the tip from the woman in apartment B2 was not anonymous. Furthermore, the tip here bore significant indicia of reliability, as there were far more corroborating details.

but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons is justified, whether or not carrying a concealed weapon violated any applicable state law. *Id.* Here, the officers were called to investigate a man with a gun banging on the door of apartment B2. The officers encountered Savage banging on that door. Savage admitted that he had a gun, and reached toward his pocket where the gun was located. Clearly the officers had reasonable suspicion that he was armed and posed a threat to their safety. Their frisk was justified.

Having found that the stop and the frisk were both based on reasonable suspicion, the Court denies Defendant's motion to suppress the physical evidence.

**B.** *Miranda*

Defendant seeks to exclude the statement that he had a gun on the ground that it was elicited from him in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Under *Miranda*, police must inform a person in custody of certain constitutional rights before they question the person. 384 U.S. at 478-79. Failure to provide this warning leads to the exclusion of testimonial evidence elicited during custodial interrogation, however a statement is not excluded despite the failure to warn, when it is not the product of custodial interrogation. *See Michigan v. Tucker*, 417 U.S. 433, 451-52 (1974).

No *Miranda* warning is required absent a "custodial interrogation." A custodial interrogation exists if police initiate questioning, or its equivalent, after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Thompson v. Keohane*, 516 U.S. 99, 107 (1995); *Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980). A person is in custody if, given the circumstances surrounding the interrogation, a reasonable

7

person would not have felt free to terminate the interrogation and leave.  *United States v. Jacobs*, 431 F.3d 99, 105 (3d Cir. 2005).  Courts consider many factors in "determining if a person was in custody, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning."  *United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006).

Savage was not in custody when he told the officers that he had a gun.  The officers approached Savage from the stairwell located a few feet away from him.  They did not verbally or physically try to restrain him.  They were in a residential hallway, not a police dominated location.  The interrogation, consisting of two brief questions, took only a few seconds from the time the officers saw Savage.  The officers did not raise their voices, display their weapons, or physically block Savage's movement.  The entire encounter was consensual.  Since there was no custodial interrogation, there was no need to read Savage his *Miranda* rights, and Defendant's motion to suppress his statement to the officers in the hallway is denied.

Even if Savage's statement came during custodial interrogation, it would be admissible.  The "Public Safety" exception to *Miranda* allows certain statements to be admissible though obtained during custodial interrogation and without *Miranda* warnings if the statements were made in response to questions that police asked under an "objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon."  *New York v. Quarrels*, 467 U.S. 649, 659 n.8 (1984); *United States v. Duncan*, 308 F.App'x 601, 605 (3d Cir.

2009). Here, two officers in a small hallway confronted a man believed to be irate, armed, and banging on a woman's door. The officers asked the question because of an objectively reasonable concern for the safety of themselves and others. Thus, the public safety exception applies, and Savage's statements should be admitted.

III. **CONCLUSION**

Defendant's attempt to suppress the gun is denied because the officers had reasonable suspicion to stop Savage, and also reasonable suspicion to frisk him for weapons. Defendant's attempt to suppress his statement that he had a gun is also denied because he was not seized when police asked him if he was armed. Furthermore, *Miranda* is inapplicable because Savage was not in custody when the statement was made. Alternatively, even if he was in custody, the statement would be admissible under the "Public Safety" exception.