IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | **No. 09-600-1** |
| CLIFTON SAVAGE | : | **BOP No. 64227-066** |

## MEMORANDUM

**Schiller, J.**                                                                                                          **February 25, 2021**

Before the Court is Clifton Savage's motion for compassionate release. For the reasons that

follow, the motion is granted.

## I.       FACTUAL BACKGROUND

On April 26, 2010, Clifton Savage was convicted of being a felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(e). The Court and the parties are intimately

familiar with the facts of the case and, as such, a detailed recitation is unnecessary. On November

11, 2008, Philadelphia police officers responded to a 911 call from an apartment building on

Haverford Avenue, where they encountered Defendant and found him to be in possession of a

loaded firearm. The Defendant argued at trial that his possession of the firearm in question was

justified; nevertheless, a jury found him guilty. On January 3, 2011, this Court sentenced Savage

to a mandatory minimum term of 180 months imprisonment. Currently, he has served about 73

percent of his full-term sentence and 85 percent of the term he would serve with full credit for

good conduct time. His projected release date is September 16, 2022.

On June 4, 2020, Savage sought compassionate release from the warden at FCI

Williamsburg, where he is currently incarcerated. (Mot. for Compassionate Release at 2.) On June

28, 2020, the warden denied that request. Savage's motion is based on his risk of serious illness or

death if he contracts COVID-19 in prison. He suffers from a number of medical conditions,

including obesity and hypertension. (Mot. for Compassionate Release at 11, Exhibit A [Medical Records].) He takes four daily medications for his hypertension and contends he is also a former smoker. (*Id*. at 11.) "Until he was incarcerated, Mr. Savage smoked two packs of cigarettes a day from the time he was 16 years old … approximately 16 years." (*Id*. at 15.) "The government has no independent verification of whether the defendant is a former smoker, although his medical records indicate that he reported 'tobacco use.'" (Gov't's Resp. in Opp'n at 4.)

## II.   DISCUSSION

### A.   Compassionate Release Statute

A district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A)(ii). Finally, prior to granting a compassionate release, a district court must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. § 3582(c)(1)(A). Those factors include the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to provide adequate deterrence to criminal conduct. *Id*. § 3553(a)(2)(A-B). Additional factors include the need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed training, medical care, and other treatment. *Id*. § 3553(a)(2)(C-D).

Although Congress has not defined the term "extraordinary and compelling reasons," the Sentencing Commission has enumerated four reasons that qualify as "extraordinary and compelling":

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is —

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.[1]

## B.    The Pandemic and the Situation at FCI Williamsburg

In May of 2020, when the Court first began issuing opinions deciding compassionate release motions, a little over 100,000 Americans had succumbed to COVID-19. Sadly, the

---

[1] This list is not exhaustive, and this Court has repeatedly rejected the Government's argument that the Sentencing Commission's outdated policy statement is binding on the courts.

country's inability to control the pandemic has made that number look small relative to the number of Americans who have lost their lives to the disease as of this writing. Today, more than half a million Americans have died due to COVID-19. And it is just as true today as it was during earlier days of the pandemic that prisons present numerous environmental factors favorable to the spread of the virus. *See United States v. Rodriguez*, Crim. A. No. 03-271, 2020 WL 1627331, at *1, 8-9 (E.D. Pa. Apr. 1, 2020) ("Prisons are tinderboxes for infectious disease.").

Williamsburg FCI has had a number of inmates and staff test positive for COVID-19. Indeed, the Bureau of Prisons website indicates that as of February 24, 2021, 26 inmates and 43 staff were currently positive for the virus at the facility. One hundred fifty-seven additional inmates previously tested positive and have since recovered. Three inmates have died from COVID-19 at Williamsburg FCI. Moreover, according to the BOP website, 843 inmates have been tested for COVID-19 at the facility, and 213 of those tests have been positive—an alarming positivity rate of over 25%.

Thus, the Court must consider whether Savage, an individual at significant risk of death if he contracts the virus, should be released in an effort to prevent a prison term from becoming a death sentence.

### C.    Extraordinary and Compelling Reasons

Savage presents three distinct health conditions that increase or may increase his risk of serious illness or death from COVID-19. Savage is obese, with a BMI of 33.24. (Gov't's Resp. in Opp'n at 12.) He also contends he is a former smoker and has "uncontrolled" hypertension. (Mot. for Compassionate Release at 17; *see also* Medical Records.) Savage cites numerous cases that support his contention that any one of the medical conditions from which he suffers has been deemed sufficient to warrant compassionate release. (Mot. for Compassionate Release at 13-17.)

When taken together, however, the case for concluding extraordinary and compelling reasons for release exist here becomes even stronger. An obese former smoker with hypertension is at increased risk of severe illness should he contract COVID-19. *See United States v. Way*, No. 94-379-2, 2020 WL 7397796, at \*1 (E.D. Pa. Dec. 17, 2020) ("The C.D.C. instructs . . . that '[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19.'")

The Government concedes that a defendant "who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19" qualifies as having an extraordinary and compelling reason for compassionate release, pursuant to the Sentencing Commission's policy statement note 1(A), because he may be less able to protect himself from an adverse outcome related to COVID-19 while in prison. (Gov't's Resp. in Opp'n at 11.) The Government acknowledges that obesity and status as a former smoker are CDC-identified risk factors, but questions the extent of Defendant's previous tobacco use, and argues, without citation to scientific or medical evidence that, "these are mitigated by the fact that he is 44 years old." (*Id*. at 12.) While advanced age can be an independent risk factor for COVID-19, the Defendant's middle-age does not eliminate the risk that his health conditions pose if he were to contract COVID-19. Indeed, CDC guidance indicates that "[a]dults of any age" with obesity (BMI over 30) and who are "current or former cigarette smoker[s,]" are at increased risk of severe illness. CDC, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 22, 2021).

The Government also raises the distinction between conditions that the CDC has stated increase the risk of an adverse outcome and conditions that the CDC has stated might increase

that risk, highlighting that hypertension falls in only the latter category. (*Id*.) This argument is unpersuasive given that Savage's hypertension is not his only risk factor for severe illness, and he also presents health conditions that the CDC has identified as definite risk factors for serious illness from COVID-19. Moreover, Savage has been diagnosed with and taking medication for hypertension since the time of his sentencing, and the condition was noted as "uncontrolled" as recently as March 4, 2020. (PSR at 15; Mot. for Compassionate Release at 17.)

Further, the Government argues Savage's "possible status as a smoker many years ago does not outweigh the other 3553(a) factors militating against release." (*Id*. at 14.) The Court rejects the Government's attempt to conflate the "extraordinary and compelling reasons" for compassionate release with the "consistency with sentencing considerations" prong of the Court's analysis. Savage presents multiple CDC-identified risk factors that increase his chances for severe illness from COVID-19 and therefore has presented extraordinary and compelling reasons for his compassionate release from FCI Williamsburg in the midst of the ongoing pandemic. Thus, the Court will turn to the question of whether a reduction of Savage's sentence at this time is consistent with the considerations outlined in 18 U.S.C. § 3553(a).

### D. Consistency with Sentencing Considerations

Although Savage has demonstrated an "extraordinary and compelling" reason for his compassionate release, the Court must decide whether release is appropriate in light of the Section 3553(a) factors. The relevant factors the Court must consider include the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, provide adequate deterrence, protect the public from further crimes, and provide the defendant with needed correctional treatment in the most effective manner; and the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2,6). This determination is left to the discretion of the district court. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Government contends that Savage should not receive a reduction in sentence because he continues to present a danger to the community. (Gov't's Resp. in Opp'n at 17.) He "was a six-time-convicted felon and Armed Career Criminal" who "engaged in a lengthy string of escalating criminal acts[.]" (*Id*.) Moreover, the Government argues, Savage has only served 154 months of an already below-guideline 180-month sentence. (*Id*. at 18.)

Obviously, courts faced with compassionate release motions will often be confronted with defendants having a significant record of drug and gun possession crimes. Savage's criminal history unquestionably includes serious crimes, *i.e.*, possession with intent to distribute and aggravated assault. (Presentence Investigation Report ["PSR"] at 6-11.) Importantly, however, all of Savage's prior convictions are more than twenty years old, and four of his five prior adult convictions took place in 1995, when he was only 18 years old. (*Id*.) Moreover, as this Court and others have noted previously, when a defendant is soon to be released from prison, the efficacy of the court's ability to protect the public from future crimes by denying compassionate release is lessened. *See United States v. Early*, Crim. A. No. 09-282, 2020 WL 2112371, at *4 (N.D. Ill. May 4, 2020).

The Court may consider the amount of time left on a defendant's sentence in deciding a motion for compassionate release. *Pawlowski*, 967 F.3d at 331. This is so because the length of time the defendant has already served is highly relevant to whether a reduced sentence will still sufficiently reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct. *See id.*; 18 U.S.C. § 3553(a)(2,6). Here, Savage has already served the vast majority of his sentence and will inevitably be released to home confinement next year. His continued confinement would make a marginal difference to the seriousness of his punishment but could have a devastating effect on his health.

Savage points out that while in prison, he has received only two write-ups, neither of which involved violence, and he has not been disciplined while in prison in more than three years. (Mot. for Compassionate Release at 20.) Savage continued his education while in prison; he successfully earned his GED in March of 2018 and then enrolled in Glendale State College courses. (*Id.*) He also offers a release plan that should allow him to avoid coming into contact with the virus as well as reunite him with his 13-year-old daughter. (*Id.* at 22.) Savage also has a plan for employment if he is granted a compassionate release. (*Id.*) The Defendant's lack of a serious disciplinary record during his incarceration, demonstrated educational achievements and continuous rehabilitative efforts, in combination with a promising release plan, counsel against finding that he remains a danger to the community.

Considering all of the relevant factors, the Court concludes that compassionate release is warranted. Savage has served more than a decade for his crime and he will be required to spend another five years on supervised release. This continuous monitoring should both provide adequate deterrence and protect the public from further crimes.

## III.   CONCLUSION

For the foregoing reasons, Clifton Savage's motion for compassion release under 18 U.S.C. § 3582(c)(1)(A)(i) is granted. Savage must now begin five years of supervised release. An Order consistent with this Memorandum will be docketed separately.